# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**WARREN FRANK**                    **\*CIVIL NO. 6:11-0121**

**VERSUS**                              **\*JUDGE HAIK**

**GATEWAY INSURANCE COMPANY,**  **\*MAGISTRATE JUDGE HILL**
**ET AL**

## FINDINGS  OF  FACT,  CONCLUSIONS  OF  LAW, AND  ORDER

Pending before this Court is the Determination of Need for, and Amount of Medicare Set Aside for the purpose of complying with the Medicare Secondary Payer Statute, 42 U.S.C. § 1395y(b)(2) and accompanying regulations [rec. doc. 36], which was filed by the plaintiff, Warren Frank ("Frank"), and defendants, Terence Coleman, d/b/a Terence Coleman Trucking ("Coleman") and Gateway Insurance Company ("Gateway") in conjunction with a settlement of all claims. The parties consented to have the undersigned decide this motion, and Judge Haik referred it to the undersigned to conduct all proceedings and enter judgment, pursuant to 28 U.S.C. § 636.  [rec. doc. 38].

## Procedural Background

On December 7, 2011, the undersigned held a settlement conference in this case, at which the parties agreed to a settlement of all claims, with the exception of a possible future Medicare Set Aside.  [rec. doc. 34].  On December 21, 2011, the

undersigned set a hearing on the Medicare Set Aside for January 24, 2012.  [rec. doc. 36].  A copy of the Order was sent to the United States of America through the United States Attorney's Office.

On December 19, 2011, Frank filed an Unopposed Voluntary Motion to Dismiss defendant, Canal Insurance Company.  [rec. doc. 35].  By Order entered on December 28, 2011, Judge Haik dismissed Canal Insurance Company without prejudice.  [rec. doc. 37].

By letter dated January 20, 2012, from Assistant United States Attorney Karen King, the Court was advised that the Government would not participate in the hearing.  Pertinent portions of the letter, a copy of which was entered into the record as Court Exhibit 1, reads as follows:

> CMS [The Centers for Medicare and Medicaid Services] does not review or verify counsel's determination of whether or not there is a recovery for future medical services or counsel's determination of the amount to be held to protect the Medicare Trust Fund except under limited circumstances.
>
> In this particular matter, CMS would neither participate or review the parties' determination of whether a set aside was needed or the amount of the set-aside.

On January 24, 2012, Judge Haik referred the Motion for Determination of Need for, and the Amount of Medicare Set Aside to the undersigned for the purpose of complying with the Medicare Secondary Payer Statute, 22 U.S.C. § 1395y(b)(2) and accompanying regulations.  [rec. doc. 38].

At the hearing on January 24, 2012, the Court received into evidence medical records, including a letter dated December 8, 2011, from Frank's treating physician, Dr. Louis C. Blanda, Jr. [Plaintiff's Exhibit 1], and the Affidavit of Dr. Blanda summarizing plaintiff's treatment [Plaintiff's Exhibit 3].  The Court also received a letter from CMS and report with Payment Summary Form dated January 4, 2012.  [Defendant's Exhibit 1].  Further, the Court received the Affidavit of Robert Launey, PD, the pharmacist supplying medication to Frank, summarizing the amount of his future medication costs.  [Plaintiff's Exhibit 2].

Subsequently, the Court issued an Order that plaintiff provide an affidavit from Dr. Blanda explaining plaintiff's projected future need for prescriptions, and the duration of that need, for filing into the record.  [rec. doc. 40].  On February 24, 2012, plaintiff provided an Affidavit from Dr. Louis Blanda dated February 16, 2012 with plaintiff's projected future medical expenses.  [rec. doc. 41].

*Bradley v. Sebelius,* 621 F.3d 1330 (11th Cir. 2010), is an allocation case in which HHS sought to recover conditional payments it had made to or on behalf of

a decedent out of settlement proceeds.  The settlement proceeds were inadequate to meet the value of the survivor's claims and the full Medicare lien. A Florida probate court determined the amount of the limited settlement proceeds to be allocated to the medical expense recovery.  There, as here, HHS was notified but opted not to participate in the probate proceeding where the allocation was made.

Using principles of equity, the probate court reduced Medicare's lien based on the proportion of Medicare's contribution to what the total settlement would have been worth if adequate funds had been available.  HHS challenged the probate court's allocation, citing language taken from the "Medicare Secondary Payer Manual," MSP Manual (CMS Pub. 100-05) Chapter 7, § 50.4.4. The district court agreed with HHS. However, the court of appeals, in a *de novo* review, reversed and held in pertinent part:

> The Secretary declined to take any part in the litigation although at all times her position was adverse to the interests of the surviving children. The probate court made the allocation, finding that the Secretary should recover the sum of $787.50. Yet, still, the Secretary, citing no statutory authority, no regulatory authority, and no case law authority, merely relied upon the language contained in one of its many field manuals and declined to respect the decision of the probate court.
>
> In essence, the Secretary is asserting that its field manual is entitled to deference under *Chevron U.S.A. Inc. V. Natural Resources Defense Council inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme

-4-

Court has stated that "agency interpretations contained in policy statements, manuals, and enforcement guidelines are not entitled to the force of law."

\* \* \*

The Secretary's position is unsupported by the statutory language of the MSP and its attending regulations. The Secretary's *ipse dixit* contained in the field manual does not control the law.

\* \* \*

There is a second reason that the Secretary's position, as adopted by the district court, is in error. Historically, there is a strong public interest in the expeditious resolution of lawsuits through settlement. . . . Throughout history, our law has encouraged settlements.  . . The Secretary's position would have a chilling effect on settlement. The Secretary's position compels plaintiffs to force their tort claims to trial, burdening the court system. It is a financial disincentive to accept otherwise reasonable settlement offers. It would allow tortfeasors to escape responsibility.

*Bradley v. Sibelius*, 621 F.3d at 1338-1339 (citations omitted).

From the pleadings, the evidence and the stipulations of the parties, the

Court makes the following:

## FINDINGS OF FACT

1.      Frank was injured in a workplace accident on June 24, 2010.  At that time,

he was employed by Ranch Supply and was unloading merchandise off of a trailer

owned by Terence Coleman, d/b/a Terence Coleman Trucking ("Coleman") and

insured by Gateway Insurance Company ("Gateway").  While Frank was standing

on the trailer unloading the merchandise, he fell in a hole on the trailer, causing him physical injuries.

2.      As a result of the accident, Frank underwent lumbar spinal surgery performed by Dr. Blanda, an orthopaedic surgeon, on July 27, 2011.  On September 15, 2011, he was doing well.  Dr. Blanda opined that Frank would more than likely not need any further surgery.  He stated that Frank's future treatment would consist of pain medications, anti-inflammatories, follow-up office visits and approximately five to six more sets of x-rays to assess the healing of his fusion.

3.      Frank filed suit on October 4, 2010, in the 13th Judicial District Court, Parish of Evangeline, State of Louisiana, seeking to recover for the damages he allegedly sustained as a result of the accident.  Defendants, Gateway and Coleman, removed the action to this Court on January 27, 2011, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Liability and damages were contested by the defendants.  The claims against defendants were settled amicably after lengthy negotiations.  All of the issues in the matter were resolved, with the exception of the future Medicare Set Aside.   The terms of the Settlement Conference were recorded by the Court on December 7, 2011.  [rec. doc. 34].

4.      Various medical information, primarily from Frank's treating physicians, were accumulated and a Payment Summary Form was prepared by the Medicare Secondary Payer Recovery Contractor ("MSPRC") for his past medical expenses. [Defendant's Exhibit 1].  The sum of these total charges was $27,135.50, and total conditional charges were $4,352.67.

5.       In his Affidavit, Robert Launey, PD, the pharmacist supplying medication to Frank, determined that Frank's future potential medication expenses that would be covered by Medicare and are related to the injuries claimed in this lawsuit amount to between $700.00 and $1,000.00 for five to six more monthly medication regimes.  [Plaintiff's Exhibit 2].  In his Affidavit, Dr. Blanda determined that Frank's future potential medical expenses for five to six more office visits at $92.00 to $186.00 per visit, in addition to five to six more sets of x-rays, totaled approximately $2,200.00.  [Plaintiff's Exhibit 3].

6.      CMS does not currently require or approve Medicare Set Asides when personal injury lawsuits are settled.  CMS does not currently have a policy or procedure in effect for reviewing or providing an opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases.

7.      In accordance with the Court's Order, Dr. Blanda submitted an Affidavit as to future medical expenses. [rec. doc. 41].  The Court finds the estimate of future medical costs to be both reasonable and reliable.

8.      Based upon the medical records of Dr. Blanda (Plaintiff's Exhibit 3), the Court finds that Frank continues to have symptoms from his back condition which were caused by the subject accident.  Therefore, the cost of future treatment for those symptoms, which is estimated by Dr. Blanda to be $2,200.00, shall be included in the amount set aside.

9.      Based on the records from Pharmacist Robert Launey, the Court finds that Frank will continue to need medications during his treatment by Dr. Blanda. Therefore, the cost for future medications, which is estimated by Robert Launey to be $1,000.00, shall be included in the amount set aside.

10.     Therefore, based on the information provided by Dr. Blanda and Mr. Launey, and including future medical treatment and medications, Mr. Guidry can anticipate $3,200.00 in future Medicare-covered items or services.  The Court finds that this amount adequately protects Medicare's interests and should be available to provide funding for future medical items or services related to what was claimed and released in this lawsuit that would otherwise be covered or reimbursable by Medicare.

12.    Frank is aware of his obligation to reimburse Medicare for all conditional payments made by Medicare for any medical expenses he incurred that were related to the injuries claimed in this lawsuit.  Although provided with notice of the hearing, the United States opted not to participate and provided no notice of any conditional payments for which it intended to seek reimbursement.  Therefore, the Court finds that there is no evidence of any conditional payments made by Medicare before the time of the settlement, other than those recognized above.

13.    There is no evidence that Frank, his attorneys, any other party or any other party's representative, is attempting to maximize other aspects of the settlement to Medicare's detriment.

Based upon the foregoing findings of fact, the undersigned makes the following:

## CONCLUSIONS OF LAW

1.    Jurisdiction over the underlying litigation is based on diversity jurisdiction, 28 U.S.C. § 1332.

2.    Medicare may obtain secondary payer status under the MSPRC if payment has been made, or can reasonably be expected to be made, under a workers' compensation law of a state or under an automobile or liability insurance policy, both of which are defined in the statute as a "primary plan."  42 U.S.C.

§ 1395y(b)(2)(A)(ii).  A primary plan's responsibility for payment can be determined by judgment or settlement.  42 U.S.C. § 1395y(b)(2)(B)(ii), 42 C.F.R. § 411.22(b)(1-3).

3.     By virtue of the terms and obligations in the settlement of the parties' claims and the plaintiffs' receipt of the settlement funds in conjunction therewith, Frank will become an "entity who received payment from a primary plan," and is therefore responsible as a primary payer for future medical items or services that would otherwise be covered by Medicare, which are related to what was claimed and released in this lawsuit, in the amount of $3,200.00  To the extent there are items or services incurred by Frank in the future that would otherwise be covered or reimbursable by Medicare, that are related to what was claimed and released in this lawsuit, Medicare shall not be billed for those items or services until the funds received by Frank for that purpose through the settlement are exhausted.

4.     Frank is obligated to reimburse Medicare for all conditional payments made by Medicare prior to the time of the settlement and for all medical expenses submitted to Medicare prior to the date of this order, even if such conditional payments are asserted by Medicare subsequent to the effective date of this order.

5.     The sum of $3,200.00, to be utilized by Frank out of the settlement proceeds to pay for future medical items or services that would be otherwise covered by

-10-

Medicare, reasonably and fairly takes Medicare's interests into account in that the figures are based on reasonably foreseeable medical needs (as opposed to the standard of proof required by the substantive law that would be applicable if the case were tried on the merits), based on the most recent information from the treating physicians.

6.     Since CMS provides no other procedure by which to determine the adequacy of protecting Medicare's interests for future medical needs and/or expenses in conjunction with the settlement of third-party claims, and since there is a strong public interest in resolving lawsuits through settlement,[1] the Court finds that Medicare's interests have been adequately protected in this settlement within the meaning of the MSP.

Based upon the foregoing conclusions of law, the Court makes the following orders:

**IT IS ORDERED** that to the extent that Frank receives confirmation from Medicare of any conditional payments made by Medicare for services provided prior to the date of this order, Frank shall promptly reimburse Medicare for such conditional payments.

---

[1]      *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 215 (1994).

**IT IS FURTHER ORDERED** that Frank shall provide funding for $3,200.00 out of the settlement proceeds for payment of future medical items or services, which would otherwise be covered or reimbursable by Medicare, related to what was claimed and released in this lawsuit.

**IT IS FURTHER ORDERED** that the fund for Frank's future medical expenses shall be deposited into an interest-bearing account for the purpose of paying any future medical items or services that would otherwise be covered or reimbursable by Medicare that are related to what was claimed and released in this lawsuit.

Signed at Lafayette, Louisiana, March 13, 2012.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE